**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PATRICIA JENNINGS-FOWLER,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:14-0969** |
| **v.** | : | **(MANNION, D.J.)** |
| **CITY OF SCRANTON, MAYOR CHRISTOPHER DOHERTY, Individually, and unknown decision maker, Individually,** | : : : | |
| **Defendants** | | |

**MEMORANDUM**

Presently before the court is a motion to dismiss the plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by the defendants, the City of Scranton ("City") and Mayor Christopher Doherty. (Doc. 20). The plaintiff, Patricia Jennings-Fowler, brings a series of claims emanating from the termination of her employment with the City. For the reasons discussed herein, the motion to dismiss is **GRANTED IN PART**, and the plaintiff's request for leave to amend is **DENIED**.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

The instant dispute concerns the termination of the employment of the plaintiff, who was employed by the City for over fifteen years and was working as a Housing Inspector at the time of her termination. The plaintiff was the only female Housing Inspector employed by the City.

On September 25, 2013, the plaintiff was suspended without pay and

on October 2, 2013, she was terminated. The plaintiff alleges, *inter alia*, that she was terminated as retaliation for supporting political candidates opposed to then-Mayor of Scranton Christopher Doherty. She claims to have been an outspoken supporter of at least two of Defendant Doherty's political rivals, namely then-candidate Gary DiBileo and current Mayor Courtright. (Doc. 17, ¶ 30-32). The plaintiff also alleges that Defendant Doherty was aware of her support for his rivals (Doc. 17, ¶ 34).

The plaintiff also claims that Defendant Doherty's administration performed "secret video surveillance" on her without her knowledge in violation of her equal protection rights. (Doc. 17, ¶ 39). She claims that this video surveillance was performed on only her because she had complained about gender discrimination and a hostile work environment in July of 2013 and because she had openly criticized Mayor Doherty.

The plaintiff claims that while serving as the only female Housing Inspector she was subjected to harassment from a male co-worker, Shelly Roberts, that she reported said harassment to the City, and that the City refused to remedy the alleged hostile work environment. (Doc. 17, ¶ 45-47). Mr. Roberts is not a party to this action. She claims that Mr. Roberts treated her like a subordinate even though he was not her superior, that he "ma[de] fun of her, harass[ed] her, and belittl[ed] her" frequently, and that she was the only employee subject to this type of treatment from Mr. Roberts. (Doc. 17, ¶ 47-50).

On May 20, 2014, the plaintiff filed her original complaint with the Court (Doc. 1) and on June 16, 2014, the defendants filed a corresponding motion to dismiss the complaint. (Doc. 7). On June 24, 2014, the plaintiff filed an amended complaint (Doc. 9), and on July 2, 2014 the Court accordingly issued an order dismissing the original motion to dismiss as moot. (Doc. 10). On July 16, 2014, the plaintiff then filed a second amended complaint (Doc. 17), and the defendants filed a corresponding motion to dismiss on July 29, 2014, which is at issue here. (Doc. 20).

## II.   LEGAL STANDARD

The defendant's motion to dismiss is brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s]

to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See* Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See* Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before

4

dismissing it as merely deficient. *See*, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). However, "[d]ismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

Before an employer may suspend an employee without pay, the employer must provide: (1) notice of the charges against her; (2) explanation of the evidence against her; and (3) an opportunity to rebut such allegations. Dee v. Borough of Dunmore, 549 F.3d 225 (3d Cir. 2008). Under Pennsylvania law, a brief and informal pre-termination or pre-suspension hearing is required, except under extraordinary circumstances. Schmidt v. Creedon, 639 F.3d 587, 589-90 (3d Cir. 2011). Post-suspension remedies do not excuse the failure to hold a pre-termination hearing. Stana v. School Dist., 775 F.2d 122, 129 (3d Cir. 1985).

With respect to actions against public officials acting in a supervisory capacity, the United States Supreme Court has held that claims must be differentiated based upon whether the defendant acted in his personal capacity or in his official capacity. Kentucky v. Graham, 473 U.S. 159, 155-65 (1985). Personal capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law." Id. (citing Scheuer v. Rhodes, 416 U.S. 232, 237-238 (1974)). Official capacity suits

"generally represent only another way of pleading an action against an entity for which an officer is an agent." Id. (quoting Monell v. New York City Dep't Soc. Serv., 436 U.S. 658, 690 (1978)). The theory of respondeat superior is inapplicable in personal capacity actions of this sort. Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir. 1988). The Supreme Court has also held that official capacity suits cannot succeed against officials acting in their official capacity on behalf of the state. Hafer v. Melo, 502 U.S. 21 (1991). "The law is well established on this point, and courts sitting in the Third Circuit have dismissed defendants sued in their official capacity when the same claims are made against the municipality." Strickland v. Mahoning Twp., 647 F.Supp.2d 422 (M.D.Pa. 2009) (citing Whaumbush v. City of Phila., 747 F.Supp.2d 505, 510 n. 2 (E.D.Pa. 2010)).

Equal protection claims typically concern governmental classifications that 'affect some groups differently than others.' Engquist v. Oregon Dept. Of Ag., 553 U.S. 591, 601 (2008) (citing McGowan v. Maryland, 366 U.S. 420, 425 (1961)). However, some forms of state action, particularly those arising in the public employment realm, innately involve "discretionary decision making based upon a vast array of subjective, individualized assessments." Id. When evaluating Equal Protection cases in this context, there are two applicable legal theories: the class-of-one theory and the selective enforcement theory. The class-of-one theory of equal protection "which presupposes that like individuals should be treated alike, and that to treat

them differently is to classify them in a way that must survive at least rationality review - is simply a poor fit in the public employment context. To treat employees differently is not to classify them in a way that raises equal protection concerns." Engquist at 605. The selective enforcement theory requires that a party must show "discriminatory enforcement of a facially valid law." Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005).

As to a hostile work environment claim, the plaintiff must show that "1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability." Mandel v. M&Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013). Any finding regarding the hostility of a work environment "must be determined by the totality of the circumstances." Fichter v. AMG Resources Corp., 528 F.App'x 225, 230 (3d Cir. 2013). Put another way, "the workplace must have been 'permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment..." McSparran v. Pennsylvania, 2014 WL 1371594 (M.D.Pa. 2014) (citing Fichter, 528 F.App'x 225).

With respect to punitive damages for a §1983 violation, this remedy is only available "when the defendant's conduct is shown to be motivated by evil

motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30 (1983). Regarding federal civil rights claims, "reckless indifference" refers to the defendant's knowledge of the illegality of his actions, not the egregiousness of his actions. Alexander v. Riga, 208 F.3d 419, 431 (3d Cir. 2000) (citing Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 536 (1999)).

### III.  DISCUSSION

In Count I of the Second Amended Complaint, the plaintiff claims that she was not provided with a pre-suspension hearing as required by law when she was suspended without pay on September 25, 2013. (Doc. 17, ¶ 17). The plaintiff claims that the defendants provided no explanation for the termination other than that "they had a 'feeling' she had committed wrongdoing." (Doc. 17, ¶ 23). This claim is uncontested by the defendant and, as such, the motion to dismiss is denied with respect to Count I.

In Count II, the plaintiff claims that her suspension and termination was politically-motivated, presumably in violation of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. 951, *et. seq.*, and Title VII of the Civil Rights Act of 1964 and 1991 (28 U.S.C. § 1331) ("Title VII"). She claims that she was retaliated against simply because she was not a supporter of Defendant Doherty during his bid for re-election in 2009. (Doc. 17, ¶ 30). She further argues that since Defendant Doherty is allegedly the only City official with the

power to suspend and fire, he must have been "personally responsible." (Doc. 24, p. 3).

The defendants argue that nowhere in the Second Amended Complaint does the plaintiff allege that Defendant Doherty was acting in anything other than his official capacity as mayor. (Doc. 23, p. 4). They point out that the plaintiff fails to plead any facts that would indicate that the defendant's alleged actions were undertaken pursuant to an official policy or custom. (Doc. 23, p. 5). Further, the plaintiff brings the same claims against both Defendant Doherty and against the City, thus creating duplicative claims.

The Court agrees with the defendants that all of the plaintiff's claims against Defendant Doherty must be dismissed. The plaintiff misconstrues "personal capacity" within the context of Kentucky v. Graham to mean any personal involvement in conflict at hand. Defendant Doherty at all times, however, was acting in his official capacity. As such, all claims against him must be dismissed as duplicative of those claims filed against the City.

As to the claims against the City, the plaintiff has failed to plead sufficient facts to raise a retaliation claim. The plaintiff has merely plead that she was outwardly opposed to Defendant Doherty's candidacy and then she jumps to the conclusion that this alone led to her termination. Accordingly, the motion to dismiss is granted with respect to Count II.

In Count III, the plaintiff claims that Defendant Doherty's administration performed "secret video surveillance" on her without her knowledge in

9

violation of her equal protection rights. (Doc. 17, ¶ 39). She claims that this video surveillance was only performed on her because she had complained about gender discrimination and a hostile work environment in July of 2013 and because she had openly criticized Mayor Doherty. (Doc. 17, ¶ 40). The defendants argue that any decisions to videotape the plaintiff in connection with her employment are inherently discretionary and, thus, will not give rise to an equal protection claim according to the Engquist decision. (Doc., 17 p. 5-6). The plaintiff counters that the defendants' argument is based upon a "class of one" theory rather than a "selective enforcement" theory. (Doc. 24, p. 4). The Court finds that Count III fails under either theory.

As to the selective enforcement theory, the plaintiff's complaint merely contends that she was treated differently than other employees, not that a law or rule was applied to her differently than others. (Doc. 17). This distinction is precisely what distinguishes the two cases that the plaintiff has cited from the instant case. The first case, Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411 (3d Cir. 2003), concerns a claim that the City of Wilkes-Barre selectively enforced the Liquor Code and the Crimes Code against particular plaintiffs. The second case, Hill v. City of Scranton, 411 F.3d 118 (3d Cir. 2005), concerns a claim that the City of Scranton elective enforced a residency ordinance against the plaintiffs. There is no such law, rule, or ordinance at issue in this case.

Under a "class of one" theory, the complaint fails to allege sufficient

facts to overcome the great discretion that is to be given to employers. When viewed in light of the Engquist case, the plaintiff has simply alleged that she was treated differently, which does not raise equal protection concerns. Indeed, "not every insult, slight or unpleasantness gives rise to a valid Title VII claim." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1297 (ed Cir. 1997). Accordingly, the motion to dismiss is granted with respect to Count III.

In Count IV, the plaintiff alleges gender discrimination and hostile work environment violations of Title VII and the PHRA. (Doc. 17, p.11). The plaintiff alleges that the alleged discriminatory treatment, particularly that which is attributed to Mr. Roberts, was due to her gender. She further claims that her male co-workers received preferential treatment as a result. (Doc. 17, §51-52). The defendants counter that the plaintiff has failed to allege sufficient facts for a gender discrimination claim to stand. (Doc. 23, p. 8-9). The Court agrees with the defendants that "[a]t best, Plaintiff has alleged that she had a poor relationship with a male co-worker." (Doc. 23, p. 9).

As to the hostile work environment claim, the Court must consider the plaintiff's arguments within the context of the factors detailed by the Third Circuit in Mandel. Taking as true the facts from her Second Amended Complaint, the plaintiff simply does not sufficiently allege that her workplace was "permeated with discriminatory intimidation, ridicule, and insult...sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment." The allegations in the

complaint do not approach this standard. Further, the plaintiff bases the gender discrimination allegation solely upon the fact that she was the only female working in her department. The plaintiff fails to assert any additional facts in support of this claim and, thus, the motion to dismiss with respect to Count IV is granted.

In Count V, the plaintiff claims that she was retaliated against in violation of Title VII and the PHRA because she filed a claim of gender discrimination and hostile work environment with the Equal Employment Opportunity Commission ("EEOC"). The plaintiff has included in her complaint nothing other that the dates of her EEOC filing, the date of her termination, and a conclusory statement that her termination was "in clear retaliation for having filed a charge of discrimination against the City of Scranton." (Doc. 17, ¶ 58-61).This pleading is insufficient to raise a claim of retaliation under Title VII and the PHRA. Accordingly, the motion to dismiss is granted with respect to Count V.

As to punitive damages against Defendant Doherty, the defendants argue that if any of the aforementioned claims survive this motion to dismiss, the plaintiff has still failed to allege a valid claim for punitive damages against Defendant Doherty in his individual capacity. We agree with the defendants that the plaintiff fails to properly allege that Defendant Doherty acted in a personal capacity at any point, had knowledge of the alleged actions against the plaintiff, was motivated by evil motive or intent, or recklessly or callously

disregarded the rights of the plaintiff.

Finally, the plaintiff requests leave to amend her complaint to cure the defects discussed above. The plaintiff has already amended her complaint twice. Accordingly, this request is denied on the grounds of undue delay pursuant to Alston v. Parker.

## IV. CONCLUSION

For the reasons discussed herein, the defendant's motion to dismiss is **GRANTED** with respect to Counts II, III, IV, and V. The defendant's motion to dismiss is **DENIED** with respect to Count I. The plaintiff's motion for leave to amend is **DENIED**. An appropriate order shall follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: December 24, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-0969-01.wpd